IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01535-WYD-MJW

PAUL J. MORRISON, an individual

    Plaintiff,

v.

MACDERMID, INC., a Colorado Corporation;
DONALD G. OGILVY, individually, and in his official capacity as Member of the Board of Directors and Chairman of the Audit Committee,

    Defendants.

## ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss filed September 17, 2007. Defendant moves to dismiss Plaintiff's complaint based on lack of personal jurisdiction and venue pursuant to FED. R. CIV. P. 12(b)(2) and (3). Defendant also moves this Court to dismiss based on Plaintiff's failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P (12)(b)(6).

For the reasons stated below, Defendant's Motion to Dismiss is granted in part, and denied in part.

I.    <u>FACTUAL BACKGROUND</u>

Plaintiff Paul J. Morrison ("Morrison"), formerly a resident of Colorado, filed a civil action against MacDermid, Inc., ("MacDermid"), a Connecticut corporation with its principal place of business in Colorado, and Donald Ogilvie ("Ogilvie"), a member of the Board of Directors and Chairman of MacDermid's auditing committee (collectively

"Defendants"). Morrison alleges that Defendants violated whistleblower protection provisions appearing in section 806 of the Sarbanes-Oxley Act ("the Act"). 18 U.S.C. §1514A *et sec.* Morrison also alleges that Defendants violated Colorado common law when they wrongfully discharged Morrison because of his whistleblowing activities, in violation of public policy.

Morrison was employed by MacDermid as the Director of Internal Audits and was later MacDermid's Corporate Controller and Officer. Morrison became aware in 2006 that MacDermid was not properly accounting goodwill.[1] Goodwill accounting must be carried at historic rates with an adjustment recorded for the difference between historic and current exchange rates. However, MacDermid was accounting goodwill in current dollars. When Morrison became aware of this error he informed MacDermid's Senior Vice President of Finance, Mr. Gregory Bolingbroke ("Bolingbroke"). Bolingbroke advised Morrison that he did not know why the goodwill accounting had been done in current dollars, but, that the employee responsible for making those decisions was no longer employed by MacDermid.

Morrison then contacted MacDermid's former external auditors KMPG, LLP. The Senior Manager of KMPG, LLP informed Morrison that Bolingbroke was aware of the improper goodwill accounting but refused to comply with proper accounting rules and procedure. Morrison next informed the current external auditing company, Grant Thornton, LLP, that Bolingbroke had misrepresented his knowledge of the goodwill

---

[1] Goodwill is known as an intangible asset associated with a business's reputation, patronage etc. Goodwill reflects the market value of the business that is not directly attributable to the value of the company's assets. *Black's Law Dictionary* (8th ed. 2004).

accounting procedures. In April 2006, MacDermid issued the first quarter results with an adjustment related to the improper goodwill accounting.

In May 2006, Morrison was performing research on the Security and Exchange Commission ("SEC") website and the EDGAR database. Based on this research Morrison became aware that Mr. T. Quinn Spitzer, Jr., a Director of MacDermid, had purchased 2,000 shares of MacDermid stock. Morrison believed that Spitzer's purchase was possibly in violation of SEC insider trading rules.

Morrison had a telephone conference with MacDermid's in-house counsel and internal auditor to discuss Spitzer's possible violation of insider trading rules. Morrison was assured that Spitzer's purchase was proper. Morrison also discussed his concern with Bolingbroke who also told him that Spitzer's purchase did not violate any SEC rules.

Morrison made Grant Thornton, LLP aware of Spitzer's purchase and informed the company that he planned to notify the SEC about possible insider trading. Grant Thornton, LLP advised Morrison to discuss the matter with MacDermid's auditing committee first. Morrison notified the Board of Directors of Spitzer's possible insider trading. He sent an e-mail to the board with a copy of Spitzer's purchase and the definition of insider trading. Morrison also requested a telephone conference.

MacDermid's in-house counsel informed Morrison that the matter was being referred to an outside law firm. Attorneys from the law firm of Jones Day contacted Morrison regarding Bolingbroke's alleged non-compliance with goodwill accounting procedures, and his alleged misrepresentation of his knowledge regarding the improper accounting. Morrison discussed his concerns with the attorneys and before the end of

the meeting his computer's hard drive was copied.

On August 3, 2006, Morrison traveled to Waterbury, Connecticut for an inner-office meeting with Ogilvie. Ogilvie opened the meeting by stating that Morrison had brought allegations against Bolingbroke and Spitzer that were false and therefore he could no longer serve as MacDermid's Corporate Controller. Morrison was then given the option of leaving with cause, leaving without cause or leaving with a severance package. Ogilvie told Morrison it was in his best interest to accept the severance package. The following day Morrison informed in-house counsel that he would not be accepting a severance package. Ogilvie then called Morrison's home to ask if settlement was possible. Morrison requested a written notice of termination. No settlement agreement was reached.

Pursuant to section 806 of the Act Morrison filed a complaint with the Department of Labor ("DOL") asserting that his employment was terminated because he alleged that Spitzer and Bolingbroke had engaged in illegal behavior. Morrison claims his allegations were made in good faith, therefore his behavior was lawful and his termination was improper. In June 2007, the DOL informed Morrison that his case was dismissed because more than 180 days had passed since he had filed the complaint. The DOL received Morrison's election to proceed with this matter in Federal Court.

I.   ANALYSIS

  A.   Failure to State a Claim

Ogilvie asserts that Morrison failed to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ogilvie claims that dismissal as to Morrison's

federal claim is proper because he failed to specifically name Ogilvie in his complaint to the DOL. Ogilvie claims that because Morrison did not properly name him in the complaint Morrison failed to exhaust all administrative remedies as required by the Act. Ogilvie further states that Morrison's tort based claim is barred because the Act provides a remedy for his alleged wrongful discharge.

In ruling on a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6), the standard used to be that the court "must accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996), *cert. denied* 522 S. Ct. 858 (1997) (quoting *Gagan v. Norton*, 35 F.3d 1473, 1474 n. 1 (10th Cir. 1994)). Thus, until recently, a dismissal was only warranted where "it appear[ed] beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *The Ridge at Red Hawk, LLP v. Schneider*, 2007 WL 1969681 at *3 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "However, the Supreme Court recently decided that 'this observation has earned its retirement,' and it has prescribed a new inquiry for use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007)). "The Court explained that a plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1974). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims." *Id.*

### I. Plaintiff's Failure to Exhaust Required Administrative Remedies as to Defendant Ogilvie

Ogilvie alleges that Morrison did not exhaust the administrative remedies required by the Act prior to filing his complaint with the federal courts. Ogilvie argues that Morrison did not properly name him in the complaint to the DOL. Ogilvie points to non-controlling case law from various district courts that have held that a plaintiff must name each defendant in the caption of his complaint to the DOL in order to properly exhaust his administrative remedies prior to filing a civil action in federal court.

Ogilvie relies on *Bozeman v. Per-Se Techs., Inc.,* 456 F. Supp. 2d 1282, 1258 (N.D. Ga 2006) to support his claim that Morrison did not exhaust his administrative remedies prior to filing the instant action. However, *Bozeman* is distinguishable from this case. The Occupational Health and Safety Administration ("OSHA") is the division of the DOL responsible for performing investigation of complaints filed based on alleged violations of the Act. In *Bozeman* the court dismissed plaintiff's complaint because it believed OSHA was not able to perform an adequate investigation because the complaint did not put OSHA on notice that the plaintiff was naming two defendants. *Id.*

However, in this case Morrison filed a pro se complaint with the DOL in the form of a two page letter. He clearly indicated whom he believed was involved in his termination. Morrison specifically named Ogilvie in his letter as a major actor in the alleged wrongdoing. At the end of his letter Morrison asks the DOL to review his termination at MacDermid. I believe that based on the form of Morrison's complaint, OSHA, conducting its investigation as a division of the DOL, had sufficient notice that he

believed Ogilvie was involved in his wrongful termination.

In addition to *Bozeman* the other cases cited by Ogilvie are distinguishable from the instant case. In the cases Ogilvie cites the plaintiff specifically named one defendant in the caption of his complaint but failed to name others. *Id*. *See also Hanna v. WCI Communities, Inc.*, No. 04-80595-CIV, 2004 U.S. Dist. LEXIS 25652 (S.D. Fla. 2004). The form of Morrison's complaint is important. He filed a pro se letter to OSHA, he did not specifically name any defendant in the caption of his complaint.

Morrison correctly points out that there is no particular form required when filing a complaint with OSHA for the purposes of the Act. *See* 29 C.F.R. §1980.103(b). As no specific form of complaint is required I believe that Morrison's letter afforded OSHA the opportunity to perform an adequate investigation as to Ogilvie's role in his termination. Additionally, I find that the letter was sufficient to put Ogilvie on notice that he may be named in Morrison's law suit.

### ii. Dismissal of Plaintiff's Tort Claim Based on an Available Statutory Remedy

Ogilvie moves this Court to dismiss Morrison's tort claim because the Act provides him with a remedy for his alleged wrongful discharge. Colorado common law allows for wrongful discharge claims when an employee can show that he was fired for any of the following reasons: 1) the employee refused to participate in illegal activity, 2) the employee refused to forsake the performance of an important public duty or obligation, 3) the employee's termination is based on the employee's refusal to forego the exercise of a job-related legal right or privilege, 4) the employee's termination is based on his "whistleblowing" activity or other conduct exposing the employer's wrong

doing or 5) the employee's termination is based on the performance of an act that public policy would encourage under circumstances where retaliator discharge is supported by evidence of employer's bad faith, malice, or retaliation. *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 107 (Colo. 1992) (citations omitted). Morrison alleges that his termination was based on whistleblowing activities. He further alleges that his termination was contrary to public policy which should encourage employees to disclose the employers illegal activities.

While common law does allow a remedy for wrongful discharge in certain cases, a claim based on a public policy argument is a narrow exception to the general rule that at-will employment can be terminated by either party, for any reason. *See Lampe v. Presbyterian Medical Center*, 590 P.2d 513 (Colo. App. 1978); *Smith v. Colorado Interstate Gas Co.*, 777 F.Supp. 854, 858 (D. Colo 1991). Additionally, case law holds that this narrow exception is not available when a statute provides the employee with a remedy to the alleged wrongful discharge. *See Corbin v. Sinclair Marketing, Inc.,* 684 P.2d 265, 267 (Colo. App. 1984). The Act provides "all relief necessary to make the employee whole" including: compensatory damages, back pay with interest, compensation for any special damages including litigation costs, expert witness fees, reasonable attorneys fees, and reinstatement of the position with the same seniority. 18 U.S.C. §1514A(c). The Act allows for relief which, if granted, will serve to make Morrison whole. Therefore, I find the wrongful discharge remedy in tort is not available to Morrison.

      B.    <u>Personal Jurisdiction</u>

The Court must engage in a two-step analysis in determining whether the

exercise of personal jurisdiction is appropriate. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1507 (10th Cir. 1995). The Court "must initially determine whether the exercise of jurisdiction is sanctioned by the Colorado long-arm statute, which is a question of state law, . . . and then determine whether the exercise of jurisdiction comports with the due process requirements of the Constitution." *Id.* at 1506-07. Because Colorado's long-arm statute has been construed by the Colorado Supreme Court as allowing personal jurisdiction to the full extent permitted under federal law, *Safari Outfitters, Inc. v. Superior Ct.*, 448 P.2d 783, 784 (Colo.1968), "[the court's] analysis collapses into a single inquiry, whether the exercise of personal jurisdiction over [the defendant] comports with due process." *Nat. Business Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1253 (D. Colo. 2000), *aff'd*, 16 Fed. Appx. 959 (10th Cir. 2001).

"[D]ue process requires only that ... [the defendant] have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (quotation omitted). Critical to the due process analysis "'is that the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there.'" *Id.* (quotations omitted). The reasonable anticipation requirement is satisfied if the defendant has engaged in "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

The "minimum contacts" requirement of due process may be met in two ways: through showing the existence of either specific jurisdiction or general jurisdiction.

*Trierweiler*, 90 F.3d at 1532. I find that the exercise of general jurisdiction over Ogilvie is not appropriate. Morrison has not shown that Ogilvie has "'continuous and systematic general business contacts' with the forum state" sufficient for this Court to exercise general jurisdiction. *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (quotation omitted). Thus, I must address whether the exercise of specific personal jurisdiction over Ogilvie would offend due process. *Id.*

The specific jurisdiction inquiry involves two steps. *Id.* First, the court must "ask whether the nonresident defendant has 'minimum contacts' with the forum state such that 'he should reasonably anticipate being haled into court there.'" *Id.* (quotation omitted). "A defendant may reasonably anticipate being subject to suit in the forum state 'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quotation and internal quotation marks omitted). Second, if the defendant has sufficient minimum contacts, "we ask whether the court's 'exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.'" *Id.* (quotation and internal quotation marks omitted). "This question turns on whether the exercise of personal jurisdiction is 'reasonable' under the circumstances of a given case." *Id.* (quotation omitted).

Ogilvie argues that he does not have minimum contacts with Colorado in order to establish personal jurisdiction. Ogilvie points to the fact that he has never lived in Colorado, paid taxes in Colorado or worked in Colorado. He further argues that his only contact with Colorado was a single phone call to Morrison to inquire as to whether this matter could be settled without litigation. I note that Ogilvie fails to mention any of the

contacts he has with Colorado through his work at MacDermid.  Ogilvie works for a company headquartered in Colorado and travels to the state quarterly to attend Audit Committee meetings.[2]

Ogilvie correctly points out that personal jurisdiction of an individual cannot be based on the employers activities.  *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 12 (1984).  However, status as an employee does not insulate an individual from suit.  *See Caulder v. Jones*, 465 U.S. 783, 790 (1984).  In *Caulder* the United States Supreme Court found that when the act in question occurred outside of the forum state it is important for the court to examine the effects of the act in the forum state.  *Id.* at 789 (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297-98 (1980)).

In this case it is important to look at the effects in Colorado of the act that occurred in Connecticut.  It is true that Ogilvie fired Morrison in Connecticut, however, Ogilvie's connection with Plaintiff is a direct result of his ties to Colorado.  Morrison alleges that Ogilvie knowingly committed a wrongful act that was aimed to have an effect in Colorado.  I find that Ogilvie purposely directed his activities towards a member of the forum state.  This litigation arises directly from an injury alleged to have occurred as a direct result of Ogilvie's activities.  Therefore, I find that there is sufficient evidence to establish personal jurisdiction as to Ogilvie.  *OMI Holdings v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir. 1998) (citing *Burger King Corp. v.*

---

[2] Ogilvie claims he only travels to Colorado semi-annually.  However, when considering a motion to dismiss, this Court must accept all facts as true.  When facts are disputed between the parties the facts must be construed in the light most favorable to the non-moving party.  *See Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991).

*Rudzewicz*, 471 U.S. 462, 472 (1984)); *See also TH Agriculture & Nutrition*, 488 F.3d at 1287*; Caulder* 465 U.S. at 789; *Dudnikov v. Chalk & Vermilion Fine Arts*, 541 F.3d 1063 (10th Cir. 2008).

Ogilvie claims that specific jurisdiction does not exist because firing Morrison was not directly related to the auditing committee meetings he attended in Colorado. However, Ogilvie's argument is too narrow. Specific jurisdiction exists when a party derives some benefit from purposive conduct directed on the forum state. *Dudnikov* 541 F.3d at 1078. In exchange for the benefit of doing business in Colorado, Ogilvie is deemed to have consented to jurisdiction for claims relating to that conduct. *Id.* Here, even though the activity is not directly related to the auditing committee meetings, it is directly related to Ogilvie's conduct in the state of Colorado.

Ogilvie also relies on the fact that Morrison was fired in Connecticut and that the event in question did not take place in Colorado. However, Morrison resides in Colorado. Even thought the event actually took place in Connecticut it was a result of Ogilvie's contacts with Colorado and it was reasonably foreseeable that the resulting injury would affect a citizen of Colorado. Ogilvie was a primary participant in the alleged wrongdoing which caused injury in Colorado. An individual injured in Colorado should not have to travel to Connecticut to seek redress from a person, who, though remaining in Connecticut, knowingly caused injury to the plaintiff in Colorado. *Caulder*, 465 U.S. at 790. I find that Ogilvie's alleged wrongdoing was aimed at Colorado and therefore this Court can properly exercise personal jurisdiction as to Ogilvie.

Ogilvie also claims that haling him into court in Colorado would offend traditional notions of fair play and justice. To determine whether the exercise of personal

jurisdiction would offend traditional notions of fair play and substantial justice the court must determine if it is "reasonable" to exercise jurisdiction under the circumstances of the case. *TH Agriculture & Nutrition, LLC*, 488 F.3d at1287 (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). I must consider several factors when determining if exercising personal jurisdiction is "reasonable." I must consider 1) the burden on Ogilvie of defending this case in Colorado, 2) Colorado's interest in resolving the dispute, 3) Morrison's interest in receiving convenient and effective relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. *See Intercon, Inc. v. Bell Atlantic Internet Solutions Inc.*, 205 F.3d 1244 (10th Cir. 2000) (citing *Burger King*, 471 U.S. at 477).

Ogilvie is not unduly burdened by being haled into court in Colorado. Ogilvie works for a company headquartered in Colorado and travels to the state regularly to conduct business. Ogilvie has retained local counsel in Colorado. This litigation stems from Ogilvie's business transactions in Colorado. Under these circumstances I find that it is not unreasonable or unduly burdensome to require a sophisticated defendant, who regularly works in Colorado, and has local counsel, to litigate in an out of state forum.

Secondly, "states have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc.*, 149 F.3d at 1096. Colorado has an interest in providing Morrison with a forum in which to bring his suit. Additionally, Morrison's "whistleblowing" actions, which allegedly lead to his wrongful termination, took place in Colorado. Because Morrison was a citizen of Colorado at all relevant times, and the actions that lead to the allegedly illegal

activity took place in Colorado the forum state has an interest in adjudicating this matter.

The third factor to consider is irrelevant in this case. Neither party currently resides in Colorado. Therefore, I do not find it necessary to discuss Morrison's interest in receiving convenient and effective relief.

The interstate judicial system has an interest in adjudicating this issue in Colorado. Colorado undeniably has jurisdiction over MacDermid. It is likely that much of the same evidence will be presented for and against both Defendants. Litigating this matter in Connecticut against Ogilvie would lead to the presentation of duplicitive evidence and the need to litigate substantially similar matters twice. Litigating this matter twice would be burdensome to witnesses as they would have to travel and testify twice in this matter. However, litigating this matter in Colorado promotes judicial economy as jurisdiction in Colorado avoids duplicative or piecemeal litigation.

Finally, the Act safeguards the important public interest of protecting people who expose illegal activity. The several states have an interest in resolving this matter timely and effectively. It is important to ensure that Morrison was not fired for retaliatory reasons. It is equally important to assure that if he was fired for improper reasons the individuals responsible are properly punished.

    C. Venue

After a careful review of the pleadings in this case, I find that venue in this Court is proper.

III.    CONCLUSION

Based on the foregoing it is

ORDERED that Defendant's Motions to Dismiss filed August 17, 2007 (docket #

6 and 8), are **DENIED** in part and **GRANTED** in part. Defendant's motion to dismiss for lack of personal jurisdiction, improper venue (docket #8) is **DENIED**. It is

FURTHER ORDERED that Defendant's motion to dismiss for failure to state a claim (docket #6) as to Plaintiff's state tort claim is **GRANTED**. The state law claim is hereby **DISMISSED**. It is

FURTHER ORDERED that Defendant's motion to dismiss for failure to state a claim (docket #6) as to Plaintiff's federal claim is **DENIED**.

Dated: September 16, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge